HARBOTTLE LAW GROUP
S. Daniel Harbottle (State Bar No. 156442)
dharbottle@harbottlelaw.com
Tracy Petznick Johnson (State Bar No. 279521)
tpjohnson@harbottlelaw.com
Lindsay L. Steinmetz (State Bar No. 286505)
lsteinmetz@harbottlelaw.com
18401 Von Karman Avenue, Suite 200
Irvine, California 92612
Telephone:  949.428.8780
Facsimile:   949.428.8779

Attorneys for Plaintiff
NEWPORT-MESA UNIFIED SCHOOL DISTRICT

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEWPORT-MESA UNIFIED SCHOOL DISTRICT, a public entity,<br><br>  Plaintiff,<br><br>  v.<br><br>M.T. and C.L., on behalf of their minor child, H.T.,<br><br>  Defendants. | Case No.: 8:23-cv-01755<br><br>**PLAINTIFF NEWPORT-MESA UNIFIED SCHOOL DISTRICT'S COMPLAINT FOR PARTIAL APPEAL OF OAH DECISION**<br><br>Action Filed: September 19, 2023 |

Plaintiff Newport-Mesa Unified School District ("District") alleges as follows:

## JURISDICTION AND VENUE

1. Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction of this action because this suit arises under the Individuals with Disabilities Education Improvement Act (IDEA), 20 U.S.C. § 1400 et seq.

2. This Court also has jurisdiction under 20 U.S.C. § 1415(i)(2)(A), as this is an appeal of an administrative decision rendered by the California Office of Administrative Hearings ("OAH").

3. Venue in this district is proper under 28 U.S.C. § 1391(b) because Plaintiff and Defendants are all located within the Central District of California, and the claims arose within this district.

## PARTIES

4. Plaintiff is, and at all times relevant to this action was, a school district duly organized and existing under the laws of California as a local education agency ("LEA"), and is located within the County of Orange, State of California.

5. Defendant H.T. ("Student") is a 10-year-old student who, at all times relevant to the issues in this case, resided within the boundaries of the District with his parents, M.T. and C.L. ("Parents").

6. Student is an individual with a disability pursuant to the IDEA. Student is eligible for special education under the categories of Autism and Speech or Language Impairment.

7. Student was Petitioner in an administrative due process complaint before California's OAH in OAH Case No. 2022100859, filed by Parents on October 28, 2022 ("OAH Action").

8. On June 22, 2023, Administrative Law Judge ("ALJ") Linda Dowd issued a decision in OAH Case No. 2022100859 ("OAH Decision"), which the District hereby partially appeals. Exhibit A.

# FACTUAL ALLEGATIONS

9. The District initially found Student eligible for special education under the category of Autism and offered him an initial individualized education program ("IEP") during his preschool year in November 2016. Parents consented to the initial IEP and Student attended school in the District's autism-specific preschool classroom for a brief period of time until Parents voluntarily withdrew him in March 2017. Parents have chosen to educate Student privately since that time. Student has not attended school in the District during the more than six (6) years that have elapsed since that time, despite the District's offers to make a free appropriate public education ("FAPE") available to him.

10. In January 2020, the District completed a triennial re-evaluation of Student and convened a triennial/annual IEP meeting over the course of two meetings on January 29, 2020, and May 29, 2020. Upon review of the January 2020 assessment results, the IEP team determined that Student continued to qualify for special education as a student with Autism.

11. Based on input from Student's classroom teacher, Parent report, and the assessment findings, the IEP team developed new goals addressing unique needs in: communication (following 2 step directions for spatial concepts; verbs; "wh" questions), fine motor (letter placement), behavior (compliance; following directions), social/emotional (pragmatics: responding to name; pragmatics: greetings/farewells; recess routine), and language arts (reading comprehension; writing).

12. The IEP was not limited to goals and objectives, but also recommended accommodations designed to support Student's access to the educational setting, including services and placement. The accommodations offered included: visual supports, wait time to process directions; repetition; gain attention prior to instruction; multi-sensory approach.

13. The District team members recommended placement in the District's autism-

specific Applied Behavioral Analysis ("ABA") special day class ("SDC") with Specialized Academic Instruction for core academics, targeted intervention and goal work. The District team recommended that Student be mainstreamed with non-disabled peers to participate in general education for 30 minutes at the beginning of each day as well as for Lunch, Recess, PE, Art, Music, and any whole school events or assemblies.

14. The District service providers also recommended related services in occupational therapy and speech and language. The District's offer of program and services to provide FAPE consisted of:

- Specialized Academic Instruction: 1225 minutes weekly, group, in the SDC ABA classroom at Eastbluff Elementary School;
- Occupational Therapy (OT) services: 1 x 30 minutes per week small group to address fine motor goal, as push-in to special education classroom; and 1 x 15 minutes per month individual consultation to address fine motor and sensory strategies/equipment;
- Speech and Language services: 2 x 30 minutes per week, group, pull-out therapy to target expressive/receptive language and pragmatics; and 1 x 15 minutes per month individual consult with teacher;
- Transportation; and
- Corresponding Extended School Year services.

15. The District also offered individual aide support for Student's first 60 days of attendance were he to return to the District, and the opportunity for Student to meet his teacher and class prior to starting, as well as a 30-day post-return IEP to discuss his progress.

16. Parents did not consent to the IEP and ultimately chose to continue to purchase private education for Student.

17. Following Parents' rejection of the District's offer of FAPE, Parents requested and the District funded four independent educational evaluations ("IEE"),

including an occupational therapy assessment completed by Dr. Susanne Smith-Roley, a speech and language assessment completed by Abby Rozenberg, a psychoeducational assessment completed by Dr. Marta Shinn, and a functional behavior assessment completed by Denise Eckman.

18. The District convened multiple IEP team meetings to discuss the private assessment results and, at Parents' request, postponed convening an annual IEP meeting until all of the IEE assessors had completed their assessments. The next annual IEP meeting was held on December 5, 2022.

19. At the December 5, 2022 IEP meeting, the District proposed goals that comprehensively addressed Student's unique needs in the following areas: behavior: attending; behavior: following directions; behavior: reduce elopement; behavior: using language to make requests as opposed to using maladaptive behaviors (e.g. stereotypy, elopement, task avoidance); social/emotional: emotional regulation; social/emotional: turn taking; communication: prepositions; communication: auxiliary + ing; communication: attributes; communication: "wh" questions; language arts: reading comprehension; language arts: sentence writing; fine motor: far point copy line placement; fine motor: far point copy sizing; fine motor: far point copy spacing; mathematics: double digit addition; and mathematics: single digit subtraction.

20. The District also proposed several accommodations which took into account H.T.'s behavioral, sensory processing, and learning needs, including: access to Common Core Standards using a modified curriculum; use of ABA methodology to support behavior modification including but not limited to priming, differential reinforcement systems, prompt hierarchy and fading, visual supports and schedules; repeating of instructions and modeling as needed; access to calming area as needed; alternative and flexible seating options; tasks broken down; assignments in manageable chunks; teacher model of information to copy; breaks as needed; visual checklist; use of self-regulation curriculum to promote self-regulation; OT approved

sensory tools and equipment and monitored by the Occupational Therapist (equipment may include but is not limited to weighted lap pad, bouncy band on chair or desk, rocker chair, fidgets, etc.); sensory strategies for self-regulation, and slant board; and consultation provided by District Behavior Specialist to support behavior modification programs and ABA methodology implementation.

21. The District's Education Specialist conveyed the District's offer of FAPE during the IEP meeting and explained that the team took into account the IEEs, Parents' input and the other information available to the team, and the District team members agreed that Student would benefit from a smaller classroom environment with ABA principles and methodology embedded into the physical environment and schedule. The District team members believed that H.T.'s unique needs could be appropriately addressed in the District's self-contained ABA SDC located at Eastbluff Elementary School, with related services in the areas of speech and language, occupational therapy, and Behavior Intervention. The District recommended the following special education and services:

- Specialized Academic Instruction: 1300 minutes x 1 per week; group; separate setting in the ABA classroom. He will also participate in the general education setting for music, science, computer lab, PE, recess periods, lunch, and other grade level activities;
- Speech and Language services: 30 minutes x 2 per week; delivered in a small group;
- Speech and Language services: 15 minutes x 1 per month; individual consultation with teacher;
- Occupational Therapy services: 30 minutes x 1 per week; direct individual treatment to address fine motor goals;
- Occupational Therapy services: 30 minutes x 1 per month; individual consultation to support sensory strategies and organizational skills;

///

- Behavior Intervention services: 60 minutes x 1 per month; individual consultation. To support behavior and social emotional progress, consultation by a BCBA District Specialist will be provided to educational team.

22. The District also recommended a 1:1 aide for the full school day (1860 minutes per week) as a temporary diagnostic support and to support Student's transition into the new school setting for the first 60 days of H.T.'s enrollment at Eastbluff.

23. Parents did not consent to the proposed IEP and chose to continue educating Student privately.

24. Parents filed their due process complaint in the OAH Action on October 28, 2022; filed a first amended complaint on December 1, 2022; and filed a second amended complaint on January 3, 2023. ALJ Dowd ultimately heard the following issues in a due process hearing held via videoconference on April 25, 26, 27, and May 2, 3, 4, and 9, 2023:

- *Issue 1*: Did Newport-Mesa deny Student a FAPE in the IEP developed on January 29, 2020, and May 20, 2020, by:
  a. failing to offer goals to appropriately address:
     i. behavior,
     ii. academics,
     iii. attention,
     iv. executive function,
     v. problem-solving,
     vi. social communication skills,
     vii. pragmatics,
     viii. sensory processing,
     ix. auditory processing deficits,
     x. self-advocacy,

       xi. self-monitoring, and

       xii. frustration tolerance

  b. failing to offer services to appropriately address the areas of need identified in Issue 1(a), and

  c. failing to offer a placement appropriate to provide the services identified in Issue 1(b)?

- *Issue 2*: Did Newport-Mesa deny Student a FAPE by failing to convene an annual IEP team meeting in January 2021?

- *Issue 3*: Did Newport-Mesa deny Student a FAPE by failing to have an IEP in place for the beginning of the 2021-2022 school year?

- *Issue 4*: Did Newport-Mesa deny Student a FAPE in the IEP developed on January 28, 2022, by:

  a. failing to offer goals to appropriately address:

    i. communication,

    ii. fine motor,

    iii. writing,

    iv. balance,

    v. self-regulation,

    vi. sensory processing,

    vii. anxiety,

    viii. impulsivity,

    ix. organization,

    x. focus,

    xi. attention,

    xii. ability to follow directions,

    xiii. task avoidance,

    xiv. pragmatics,

    xv. self-advocacy,

      xvi. reading,
      xvii. mathematics,
      xviii. executive functioning,
      xix. social skills,
      xx. motor planning,
      xxi. auditory processing deficits,
      xxii. self-monitoring, and
      xxiii. problem solving,
   b. failing to offer services to appropriately address the areas of need identified in Issue 4(a), and
   c. failing to offer a placement appropriate to provide the services identified in Issue 4(b)?

- *Issue 5*: Did Newport-Mesa deny Student a FAPE in the IEP developed on October 24, 2022, by:

   a. failing to offer goals to appropriately address:
      i. communication,
      ii. daily living skills,
      iii. task avoidance,
      iv. elopement,
      v. verbal stereotypy,
      vi. focus,
      vii. attention,
      viii. social skills,
      ix. motor skills,
      x. academics,
      xi. attention to task,
      xii. adaptive living skills,
      xiii. independence,

    xiv. behavior,
    xv. verbal learning,
    xvi. following directions,
    xvii. verbal protesting,
    xviii. adaptive functioning,
    xix. sensory processing,
    xx. anxiety,
    xxi. transitions,
    xxii. self-regulation, and
    xxiii. community living,
  b. failing to offer services to appropriately address the areas of need identified in Issue 5(a), and
  c. failing to offer a placement appropriate to provide the services identified in Issue 5(b)?

- *Issue 6*: Did Newport-Mesa deny Student a FAPE in the IEP developed on December 5, 2022, by:
  a. failing to offer goals to appropriately address:
     i. communication,
     ii. daily living skills,
     iii. task avoidance,
     iv. elopement,
     v. verbal stereotypy,
     vi. focus,
     vii. attention,
     viii. social skills,
     ix. motor skills,
     x. academics,
     xi. attention to task,

        xii.    adaptive living skills,

        xiii.    independence,

        xiv.    behavior,

        xv.    verbal learning,

        xvi.    following directions,

        xvii.    verbal protesting,

        xviii.    adaptive functioning,

        xix.    sensory processing,

        xx.    anxiety,

        xxi.    transitions,

        xxii.    self-regulation, and

        xxiii.    community living,

    b.  failing to offer services to appropriately address the areas of need identified in Issue 6(a), and

    c.  failing to offer a placement appropriate to provide the services identified in Issue 6(b)?

25. The Parties submitted closing briefs on May 30, 2023, and ALJ Dowd issued the OAH Decision on June 22, 2023.

26. Through the OAH Decision, ALJ Dowd determined correctly that the District prevailed on a substantial majority of issues and sub-issues outlined above with the exception of the following, which were in error:

    a.  *Issue 1(a)(viii)*: The ALJ erroneously determined that the District denied Student a FAPE in the IEP developed on January 29, 2020, and May 20, 2020, by failing to offer goals to address sensory processing appropriately.

    b.  *Issue 1(b)*: The ALJ erroneously determined that the District denied Student a FAPE in the IEP developed on January 29, 2020, and May 20, 2020, by failing to offer OT services to address sensory processing

appropriately.

    c. *Issue 6(a)(ix), (xix), and (xxii)*: The ALJ erroneously determined that the District denied Student a FAPE in the IEP developed on December 5, 2022, by failing to offer goals to address motor skills, sensory processing, and self-regulation appropriately.

    d. *Issue 6(b)*: The ALJ erroneously determined that the District denied Student a FAPE in the IEP developed on December 5, 2022, by failing to offer OT services to address sensory processing appropriately.

## FIRST CAUSE OF ACTION
## PARTIAL APPEAL OF THE OAH DECISION

27. The District incorporates by reference each and every allegation of Paragraphs 1 through 26 of the Complaint as though fully set forth herein.

28. The District does not appeal the OAH Decision's thorough and careful findings that the District prevailed on Student's Issues 1(a)(i)-(vii) and (ix)-(xii); Issue 1(c); Issue 2; Issue 3; Issue 4(a); Issue 4(b); Issue 4(c); Issue 5(a); Issue 5(b); Issue 5(c); Issue 6 (a)(i)-(viii), (x)-(xviii), (xx)-(xxi), and (xxiii); or Issue 6(c).

29. With respect to Issue 1(a)(viii), Issue 1(b), Issue 6(a)(ix), (xix), and (xxii), and Issue 6(b), the OAH Decision overlooked or otherwise failed to discuss material evidence presented and made factual determinations inconsistent with the record. By way of example and not an exhaustive list, the District contends:

30. The OAH Decision misconstrued the facts in finding that the District identified that Student had sensory needs but failed to offer goals specific to this area. The District's two Occupational Therapists and others testified that the goals and accommodations as well as the classroom design in Student's IEPs appropriately addressed Student's fine motor and sensory needs based on the District's occupational therapy assessment and data collection.

31. The ALJ noted that the District's Occupational Therapists testified that they did not write sensory processing goals because the District had offered an applied

behavior analysis classroom with sensory regulation tools built into the classroom setting, and the OAH Decision articulated the correct legal standard that applied in this instance, that: "The IDEA requires IEP goals to target a student's needs but does not require an IEP to contain every goal from which a student might benefit. (34 C.F.R. § 300.137; *Capistrano, supra*, 21 F.4th at p. 1133.) Moreover, a school district is not required to develop goals for areas covered by the general curriculum for which the student needs only accommodations and modifications. (34 C.F.R. § 300, Appendix A – Assistance to States for the Education of Children with Disabilities (1999), discussing language also contained in the 2004 reauthorization of the IDEA at 20 U.S.C. § 1414(d)(1)(A)(i)(II).)" Exhibit A, OAH Decision, p. 13.

32. Despite this, the ALJ erroneously held that Student required additional sensory processing goals, erroneously finding that the IEP did not describe the sensory regulation tools and listed generic sensory tools and strategies. This was inconsistent with the IEPs offered as evidence which listed specific sensory tools and strategies that were recommended for Student. The District's assessment report also contained recommendations for sensory strategies, from which the District's Occupational Therapist believed Student would benefit based on her assessment findings. The OAH Decision overlooked or ignored this material and relevant evidence.

33. The ALJ gave unreasonable weight to the testimony of Student's expert witness, Dr. Smith-Roley, that Student required additional goals and occupational therapy services, in light of her attenuated familiarity with Student and evidence presented to the contrary. Moreover, the ALJ did not apply the snapshot rule to the OT goals or services the District offered in the January 2020/May 2020 or December 2022 IEPs based on the information the IEP team had at the time the IEPs were developed. The appropriateness of a District's offer of FAPE must be measured by the information available to the IEP team at the time that the team prepares the FAPE offer. In the Ninth Circuit, this concept is referenced as the

snapshot rule in that an IEP is evaluated in light of information available at the time it was developed, and is not to be evaluated in hindsight. *Adams v. State of Oregon*, 195 F.3d 1141, 1149 (9th Cir. 1999). The *Adams* Court further stated that an IEP must be evaluated in terms of what was objectively reasonable when it was developed. *Id*. Here, the District offered goals and services based on the information available to the IEP team, and the District offered to hold a progress review IEP meeting to update the IEPs if needed, after Student enrolled in the District.

34. The OAH Decision failed to consider or analyze evidence presented at hearing that Dr. Smith-Roley had provided Student's IEP team with recommendations for goal areas but informed the team she could not provide present levels/baselines for any of her proposed goals, as her assessment was completed several months prior to the IEP meeting where she made her recommendations and she had only worked with Student for the limited purpose of her assessment. She told the IEP team that she believed the current school team would be better suited to determine present levels. The OAH Decision does not evince a careful, impartial consideration of the evidence as to those matters addressed in this appeal, as this evidence was omitted from the ALJ's analysis of Student's Issues 1(a)viii and 1(b) and Issue 6(a)(ix), (xix), and (xxii).

35. Similarly, the OAH Decision failed to analyze or discuss evidence that Dr. Smith-Roley acknowledged to the IEP team that her recommendations for accommodations and services were based on conjecture, as Student was not receiving his education in a traditional school setting at the time of her assessment, and she did not expect the team to incorporate all of her recommended accommodations into the IEP, stating that they were suggestions for what might work through trial and error.

36. The ALJ failed to explain the facts she relied upon in reaching her legal conclusion that the District denied Student a FAPE by failing to offer appropriate occupational therapy services. The OAH Decision is devoid of any testimony

offered by the District's Occupational Therapists in this regard. The ALJ appeared to rely exclusively on Dr. Smith-Roley's testimony.

37. The OAH Decision failed to question the credibility of Dr. Smith-Roley's testimony and the basis for her opinion in comparison to the District's Occupational Therapists, who were experienced with school-based occupational therapy. The OAH Decision did not distinguish between what services Student required to access his education in the least restrictive environment, and what might be appropriate in a clinical setting.

38. Although the OAH Decision is otherwise well-reasoned and deserving of deference, its determination of Issue 1(a)(viii), Issue 1(b), Issue 6(a)(ix), (xix), and (xxii), and Issue 6(b), must be reversed because the ALJ's findings of fact and conclusions of law *do not* evince a careful, impartial consideration of all of the evidence and demonstrate sensitivity to the complexity of the issues presented, as required by law. *County of San Diego v. Cal. Special Educ. Hearing Office,* 93 F.3d 1458, 1466 (9th Cir. 1996).

39. The OAH Decision must also, consequently, be reversed as to each of the ordered remedies. Under the OAH Decision, Student prevailed only as to the limited sub-issues under Issue 1(a)(viii), Issue 1(b), Issue 6(a)(ix), (xix), and (xxii), and Issue 6(b). Upon a reversal by this Court on those issues, Student will not be a prevailing party as to any issues. No remedies may properly be awarded to a party who has not prevailed, and therefore each of the orders must be reversed.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the following relief:

1. For an order reversing the OAH Decision as to Issues 1(a)(viii), Issue 1(b), Issue 6(a)(ix), (xix), and (xxii), and Issue 6(b), and the remedies awarded to Student; while affirming the remainder of the OAH Decision, and denying any and all remedies;

2. Costs of suit incurred herein; and

3. For such other and further relief as the Court may deem just and proper.

DATED: September 19, 2023

HARBOTTLE LAW GROUP
S. DANIEL HARBOTTLE

By: *[signature]*

S. DANIEL HARBOTTLE
TRACY PETZNICK JOHNSON
LINDSAY L. STEINMETZ
Attorneys for
NEWPORT-MESA UNIFIED SCHOOL DISTRICT